59 F.3d 902
 35 U.S.P.Q.2d 1342, 95 Daily Journal D.A.R. 8929
 SELF-REALIZATION FELLOWSHIP CHURCH, a California
corporation, Plaintiff-Counter-Defendant-Appellant,
v.
ANANDA CHURCH OF SELF-REALIZATION, a California corporation,
Defendant-Counter-Claimant-Appellee.
 Nos. 93-16345, 93-16570.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 4, 1995.
Decided July 6, 1995.
 
 James P. Clark and Howard A. Jacobson, Gibson, Dunn & Crutcher, Los Angeles, CA, for plaintiff-counter-defendant-appellant.
 Jon R. Parsons, Palo Alto, CA, and Sheila Rush, Mountain View, CA, for defendant-counter-claimant-appellee.
 Appeals from the United States District Court for the Eastern District of California.
 Before: BRUNETTI, THOMPSON, and HAWKINS, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 
 1
 The Self-Realization Fellowship Church (SRF) sued the Ananda Church of Self-Realization (CSR) for infringing its trademarks and trade names for terms like "Self-realization." The district court dissolved a preliminary injunction enjoining CSR from infringing on SRF's trade names and marks, and SRF appeals. We affirm the order dissolving the injunction with respect to some of the marks and reverse with respect to others.
 
 I. FACTS AND PROCEEDINGS BELOW
 
 2
 "Self-realization" is the ultimate goal of Hindu-Yoga teaching. The Hindu-Yoga spiritual tradition teaches that there exists an "Ultimate Reality." The Ultimate Reality is infinite, but it exists at the core of every person's being as the "Self." According to Yoga, the goal of life is to transcend one's finite limitations, like body, ego, and personality, to dissolve the barriers between the personal self and the infinite Self, to "realize" a union with the "Self." One prominent guru in this religious tradition was Paramahansa Yogananda, known to many Americans as the author of Autobiography of a Yogi.
 
 
 3
 Modern-day disciples of this guru, this advocate of rising above worldly and ego-bound concerns, have founded two rival schools that are now engaged in a dispute about the intellectual property rights to such terms as Yogananda's name and "Self-realization." In the 1920s, Yogananda established a school with headquarters in Los Angeles. His school, which started referring to itself as the "Self-Realization Fellowship" in the early 1930s, has expanded in membership to serve hundreds of thousands of members. It incorporated in 1935 as the "Self-Realization Fellowship Church."
 
 
 4
 SRF did not confine itself to traditional instructional methods like written and oral teaching. Instead, it expanded into product lines of spiritual aids like Self-realization audio and video tapes, a Self-Realization magazine, and Self-realization and Paramahansa Yogananda posters, photos, wall calendars, and datebooks. (Sales of these products currently net more than $1.4 million annually.) Later, to protect its diversified product lines, it sought to acquire intellectual property protection, by registering trademarks for the terms "Self-Realization Fellowship," "Self-Realization Fellowship Church," and "Paramahansa Yogananda."
 
 
 5
 CSR came into being after a member of SRF left the group. Donald Walters, known to CSR members as Swami Kriyananda, joined SRF in the 1940s, receiving instruction directly from Yogananda, became a vice president of the church, and thereupon joined SRF's Board of Directors. While the parties disagree about how and why Walters left SRF, they agree he left in 1962 and founded his own organization in the late 1960s, the "Yoga Fellowship."
 
 
 6
 Swami Kriyananda's fellowship expanded rapidly. In 1967, he made headquarters, called "Ananda Village," for his fellowship in Nevada City, California. By the 1980s, his fellowship included several congregations outside Ananda Village. In January 1990, Kriyananda's group, having changed its name once already, changed its name again to the "Church of Self-Realization" and began using this name in advertisements and promotional literature. CSR, like SRF, also identifies itself as spreading Paramahansa Yogananda's teachings.
 
 
 7
 "Church of Self-Realization" sounded too much like "Self-Realization Fellowship Church" for SRF to have peace of mind, especially since both groups represented themselves as Yogananda's disciples. In February 1990, SRF filed a series of applications to register the terms "Self-Realization Fellowship," "Self-Realization Fellowship Church," and "Paramahansa Yogananda" with the United States Patent and Trademark Office and the California Secretary of State. In July 1990, it filed a complaint in the United States District Court for the Eastern District of California, bringing claims for trademark infringement and other intellectual property claims not relevant to this appeal. SRF alleged infringements of its trademark for the term "Paramahansa Yogananda" and of its trade names and marks for the terms "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church." The district court issued a preliminary injunction enjoining CSR from using Paramahansa's name or "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" in CSR's name or in any of its products or services.
 
 
 8
 CSR countered by moving for summary judgment on the infringement claims, alleging that each of SRF's marks were invalid. On April 24, 1992, the district court issued a bench ruling that "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" were invalid trade names and marks as a matter of law. SRF moved for reconsideration of this ruling, but in the meantime CSR moved to lift the injunction because the trademarks underlying the injunction were invalid. On June 21, 1993, the district court issued a memorandum order that: 1) granted CSR summary judgment on SRF's infringement claim on the trademark for "Paramahansa Yogananda"; 2) granted reconsideration of the ruling regarding the "Self-realization" trade names and marks, affirmed its prior ruling for CSR as to the trade names, and granted CSR summary judgment on other grounds as to the trademarks; and 3) having granted CSR summary judgment that all of SRF's trade names and marks were invalid, dissolved the preliminary injunction. On July 8, 1993, the district court issued an order to the United States Patent and Trademark Office and the California Secretary of State, requiring that SRF's trademark registrations be cancelled. SRF timely appeals the June 21 and July 8 orders.
 
 II. APPELLATE JURISDICTION
 
 9
 Because the district court still has jurisdiction to determine the alleged and pending claims and counterclaims other than SRF's trademark infringement claims, there is no final judgment in this case, appealable under 28 U.S.C. Sec. 1291. However, it is obvious that the portion of the June 21 order dissolving the preliminary injunction is an interlocutory order appealable under 28 U.S.C. Sec. 1292(a)(1). As the bases for our jurisdiction over the other orders on appeal are not so obvious, we explain here why we have jurisdiction over all of the orders SRF asks us to review.
 
 
 10
 A. Jurisdiction Over the Grants of Summary Judgment
 
 
 11
 SRF asks us to review the portion of the June 21 order granting CSR summary judgment on the validity of the "Paramahansa Yogananda" mark (the summary judgment order). SRF also asks us to review the portion of the June 21 order denying reconsideration of the April 24 order granting summary judgment on the "Self-Realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" names and marks (the reconsideration order).
 
 
 12
 These orders are reviewable because their legality is inextricably bound up with the legality of the dissolution of the injunction. 28 U.S.C. Sec. 1292(a)(1) confers jurisdiction not only over orders concerning injunctions, but also over matters inextricably bound up with the injunctive order from which appeal is taken. TransWorld Airlines v. American Coupon Exch., 913 F.2d 676, 680 (9th Cir.1990). A summary judgment order that provides the legal authority to issue an injunction--that constitutes a "necessary predicate" to complete review of the injunction--is inextricably bound up with the injunction. See id.
 
 
 13
 The June 21 summary judgment and reconsideration orders removed any legal basis for the preliminary injunction enjoining CSR from using the terms at issue. The June 21 summary judgment order ruled that SRF's mark on the term "Paramahansa Yogananda" was invalid as a matter of law, and the reconsideration order ruled that SRF's trade names and marks on the terms "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church," were also invalid as a matter of law. Since these trade names and marks were ruled invalid, SRF had no legal right to be free from CSR's use of the terms, and as these orders were necessary predicates to lifting SRF's preliminary injunction on CSR, they are appealable as orders inextricably bound up with review of the dissolution order.
 
 B. Jurisdiction Over the Cancellation Order
 
 14
 SRF also appeals from the district court's July 8 order that the registrations of its federal and state trademarks be cancelled (the cancellation order). To our knowledge, this appeal presents the first instance in this circuit in which a party has asked us to review a registration-cancellation order as an interlocutory order. We conclude that the cancellation order is appealable.
 
 
 15
 The district court's reasons for ordering the cancellation of SRF's registrations were identical to the reasons it dissolved the preliminary injunction with respect to the registered marks. The cancellation and dissolution orders both rested on the summary judgment rulings that the trademarks in question were invalid. Where the justification for an interlocutory order is "identical" to the justification for an interlocutory injunction, the former ruling is appealable as a merits order inextricably bound up with the injunctive ruling. Id. at 681.
 
 
 16
 We recognize that the Third Circuit has ruled that a cancellation order is not appealable as an injunction. Santana Prods., Inc. v. Compression Polymers, Inc., 8 F.3d 152, 154 (3rd Cir.1993). However, in Santana Products, the registration-cancellation order was on appeal alone; it did not accompany an interlocutory injunctive order. Id. at 153. The Third Circuit inquired whether a cancellation order is an injunction or a modification of an injunction, but it did not have to inquire whether a cancellation order is appealable as an order inextricably bound up with an interlocutory injunction. In fact, the court expressly noted that its holding would not control this issue. Id. at 155 n. 3. Just as our holding here does not control the issue whether a party may invoke 28 U.S.C. Sec. 1292(a)(1) to appeal a cancellation order on appeal alone, Santana Products' reasoning is not persuasive with respect to the issue before us here.
 
 
 17
 Having established that we have jurisdiction over all the orders from which SRF appeals, we now turn to the merits of SRF's appeal.
 
 III. STANDARD OF REVIEW
 
 18
 We review the district court's grants of summary judgment de novo. Jesinger v. Nevada Fed. Credit Un., 24 F.3d 1127, 1130 (9th Cir.1994). Because the district court's order lifting the preliminary injunction on CSR depended only on its summary judgment rulings, the court based its dissolution of the injunction only on conclusions of law, which we review de novo as well. Miller v. California Pac. Medical Ctr., 19 F.3d 449, 455 (9th Cir.1994) (en banc).
 
 
 19
 IV. THE INVALIDITY OF THE "PARAMAHANSA YOGANANDA" MARKS
 
 
 20
 The district court granted summary judgment for CSR in its June 21, 1993, order on SRF's registered trademark for the term "Paramahansa Yogananda." The court ruled that the mark was invalid under federal trademark law because SRF did not employ Yogananda's name for a trademark use--to identify SRF's products as distinctively SRF's. SRF appeals from this ruling. The district court also analyzed whether "Paramahansa Yogananda" was invalid under California law. This analysis was separate from its federal law analysis. Because SRF has not challenged the district court's state law analysis, we do not review it here.
 
 
 21
 Implicit in the concept of a trade mark "is a requirement that there be direct association between the mark ... and the services specified in the application, i.e. that it be used in such a manner that it would be readily perceived as identifying such services." In re Moody's Investor Serv., Inc., 13 U.S.P.Q.2d 2043, 2047 (T.T.A.B.1989); see 15 U.S.C. Sec. 1127; In re Advertising & Marketing Dev., Inc., 821 F.2d 614, 620 (Fed.Cir.1987). The "Paramahansa Yogananda" mark was invalid if it did not create a direct association between SRF products bearing the mark and SRF. CSR, as the proponent of summary judgment, bore the burden to produce evidence showing that SRF could not establish in its prima facie case that "Paramahansa Yogananda" was a valid mark. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986).
 
 
 22
 CSR satisfied its burden by presenting evidence showing that SRF did not use the term "Paramahansa Yogananda" in a service mark manner. CSR presented expert testimony that SRF did not use the term "Paramahansa Yogananda" with any of the traditional trademark indicia (e.g., use of the term with a "TM" sign next to it). An expert also testified that SRF usually used the phrase "Paramahansa Yogananda, Founder," not the name alone. Most important, SRF labels many of its products with a warning that many other groups promote material with Yogananda's name on it. According to the label, these groups do not promote Yogananda's "true" teachings, and the only way to guarantee access to Yogananda's true teachings is to buy material with the Self-Realization Fellowship Church sign on it. In other words, SRF represents that "Self-Realization Fellowship Church" distinctively identifies its products and creates a direct association between it and its products, and a buyer who buys a product merely associating itself with "Paramahansa Yogananda" could lead the buyer to buy a product that is neither authentic nor made by SRF.
 
 
 23
 Since CSR met its burden, SRF bore the burden to produce evidence raising a genuine factual issue as to whether SRF used the term "Paramahansa Yogananda" to identify SRF products. Id. SRF argues it did so by introducing into evidence the specimens it submitted with its applications to register the term, but the specimens do not create a genuine issue of fact about trademark use. All the specimens mention "Self-Realization Fellowship," but they do not use Yogananda's name in a manner consistent enough to be an identifying mark. The specimens' references to Yogananda vary, quoting what he said, describing his teachings, or saying that SRF was founded by him. Instead of raising a genuine factual issue about SRF's use of Yogananda's name in a service mark manner, SRF's evidence only supports the conclusion the district court drew from CSR's evidence: The terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church" create a direct association between SRF and its products, and that "Paramahansa Yogananda" does not.
 
 
 24
 SRF argues that it could have used Yogananda's name both to identify its products as SRF products and to identify their association to the yoga. It argues that, even if CSR's proof showed that SRF uses Yogananda's name to associate its products and services to the guru, CSR's proof does not exclude the possibility that consumers identify Yogananda's name with SRF's products and services. SRF cites several cases for the proposition that a service mark may identify a source of services and perform another function for the source. See In re Wood, 217 U.S.P.Q. 1345, 1348 (T.T.A.B.1983); In re Carson, 197 U.S.P.Q. 554, 555 (T.T.A.B.1977); Ex parte Grandma Moses Properties, Inc., 117 U.S.P.Q. 366, 366 (Comm.Pat.1958). This argument does not help SRF. Even if "Paramahansa Yogananda" performs another function for SRF, SRF has not shown that it uses Yogananda's name in a service mark manner, to identify SRF products and services as coming from SRF. In fact, SRF's own product labels are evidence that SRF does not intend to use Yogananda's name in such a manner, the warning that many organizations produce products with Yogananda's name on them, but only the "Self-Realization Fellowship" name on a product label guarantees a genuine SRF product. We thus affirm the district court's grant of summary judgment on the "Paramahansa Yogananda" mark.
 
 
 25
 V. THE INVALIDITY OF THE "SELF-REALIZATION" TRADE NAMES AND MARKS
 
 
 26
 A. The Separate Dispositions of the "Self-realization" Names and Marks
 
 
 27
 CSR filed a "Motion for Partial Summary Adjudication" asking the district court to rule that "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" were all invalid trade names and marks. In its April 24, 1992, bench ruling, the district court ruled that all of these terms were generic and thus invalid. See Roux Laboratories, Inc. v. Clairol, Inc., 427 F.2d 823, 829, 57 CCPA 1173 (1970). SRF moved for the court to reconsider this ruling. One ground for reconsideration was evidence that these terms were suggestive, or perhaps descriptive, but not generic. A descriptive term is not necessarily invalid, and a suggestive term is automatically valid. See Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc., 973 F.2d 1033, 1040 (2d Cir.1992).
 
 
 28
 In its June 21, 1993, ruling, the district court granted SRF's motion for reconsideration, but affirmed its grant of summary judgment on other grounds. The court did not change its April 24 ruling to the extent that it had found that SRF's trade names for the terms "Self-realization," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" were invalid. In other words, the court still concluded that these terms were generic as used in SRF's organizational name. However, the district court changed its reason for deciding that SRF's trade marks for these terms were invalid. It concluded that these terms were invalid when used to name SRF's products and services because the terms were descriptive and without secondary meaning. See id.
 
 
 29
 SRF appeals from the district court's determination that SRF's trade names and trade marks fell in different use categories. This issue raises two questions: whether the district court had the legal authority to conduct separate analyses if necessary, and whether the facts indicated that separate analyses were necessary. We conclude that the district court correctly conducted separate analyses to determine, on one hand, whether "Self-realization" was generic in the name of a spiritual organization and, on the other hand, whether the term is descriptive and without secondary meaning as part of the title of a product of that organization.
 
 
 30
 The district court correctly recognized that the trade names and marks might require separate analyses. "[A] term that is in one category for a particular product may be in quite a different one for another." Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4, 9 (2d Cir.1976); accord Surgicenters of Am., Inc. v. Medical Dental Surgeries, Co., 601 F.2d 1011, 1019 (9th Cir.1979). It is equally likely that a term may be in one category when used as a trade name but quite another for a trade mark. A trademark represents the mark holder on "the vendible commodity to which it is affixed," while a trade name symbolizes "a business and its goodwill." American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 162, 70 L.Ed. 317 (1926).
 
 
 31
 The facts of Sunbeam Furniture Corp. v. Sunbeam Corp. offer an example of a case in which one term fell in different categories when used in a trade name and a trade mark. 191 F.2d 141 (9th Cir.1951). Sunbeam manufactured appliances, including lamps. Sunbeam Furniture sold an electric lamp made by Expert Lamps, Inc. with a label saying, "This is a genuine SUNBEAM LAMP." Sunbeam sued Sunbeam Furniture for using the word "Sunbeam" in its name and its products. Id. at 143. We ruled that "Sunbeam" merited protection as a mark but not a name. Sunbeam deserved protection of the word as part of a service mark for its lamps, because it successfully showed that customers confused the two brands of lamps. Id. at 144. However, we also ruled that Sunbeam Furniture should not have been enjoined from using the word "Sunbeam" in its name because the word was common and the two companies were in separate lines of business. Id. at 144-45.
 
 
 32
 SRF cites Accuride International, Inc. v. Accuride Corp., 871 F.2d 1531, 1534 (9th Cir.1989), for the proposition that a trade name and mark holder may bring analogous actions for name and mark infringement. But the district court did allow SRF to bring an infringement suit to protect both its names and its marks. Accuride did not require the court to perform identical analyses of the three terms at issue even if the factual record indicated that the terms' meanings differed in the context of SRF's reputation and the context of SRF's products.
 
 
 33
 On the facts of this case, the trade names and marks at issue should have been considered separately. "Self-realization" has different contexts in the phrases "Self-realization spiritual organization" and "Self-realization book." If "Self-realization" is invalid in the context of spiritual organizations, it is because a "Self-realization spiritual organization" is a generic concept--consumers of Hindu-Yoga organizations' products and services think a "Self-realization spiritual organization" does not mean SRF but instead describes a type of church, a church that follows Hindu-Yoga teachings. We discuss this possibility in the next section.
 
 
 34
 On the other hand, if "Self-realization" is invalid in the context of products and services, like a "Self-realization book," the most likely reason is that the relevant consumer understands the phrase "Self-realization book" to mean "a book designed to help me achieve spiritual attainment," not "a book produced by SRF." The appropriate legal inquiry is whether "Self-realization" is descriptive. We discuss this possibility in section V.C.
 
 
 35
 B. The Genericness of "Self-realization" As a Trade Name
 
 
 36
 The district court ruled in its April 24, 1992, bench ruling--and declined to reconsider in its June 21 ruling--that "Self-realization" was a generic term when SRF used it in its name. This ruling meant that "Self-realization" was invalid as a trade name--"[t]he terms 'generic' and 'trademark' are mutually exclusive." 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition Sec. 12.01, at 12-3 (3rd ed., Release # 3, 1994). A term is a generic name, not a trade name, if it "merely identifies the genus of which the particular [business] is a species." Liquid Controls Corp. v. Liquid Control Corp., 802 F.2d 934, 936 (7th Cir.1986).
 
 
 37
 In this case, "Self-realization" is generic in the context of the name of a spiritual organization if the term identifies a general class of spiritual organizations, instead of a single, unique organization. CSR, the proponent of summary judgment, presented the declarations of officials in other Hindu-Yoga organizations that "Self-realization" "is the goal of all religious practice," "is a term used to describe the goal of Yoga," and is "the systematic process of unfolding who we really are." See 1 McCarthy Sec. 12.02[b][i], at 12-23 to -24 (competitors' usage of a term is evidence of whether it is generic). CSR also presented SRF literature using "Self-realization" in a context applicable to all of Yoga. See 1 id. Sec. 12.02[b](2), at 12-24 (evidence that plaintiff uses a term in a generic manner is strong evidence that the term is generic).
 
 
 38
 This evidence suggests that a "Self-realization" organization is a class of organization dedicated to spiritual attainment in the manner taught by Yoga, not an organization that is part of the SRF chain of churches. The evidence shows that the term describes the class of Yoga spiritual organizations, not SRF's single organization.
 
 
 39
 SRF argues that CSR's evidence does not meet CSR's burden because it proves genericness in the wrong context. According to SRF, CSR's evidence shows that the general English-language meaning of "Self-realization" is generic, but not the meaning within the American Yoga community. We reject this argument.
 
 
 40
 SRF correctly argues that one term may have different meanings to different groups of listeners. See Surgicenters of Am., 601 F.2d at 1019; Abercrombie & Fitch Co., 537 F.2d at 9. SRF also correctly points out that the way to determine whether a term is generic is to determine whether consumers of Hindu-Yoga products and services think it is generic. See Anheuser-Busch Inc. v. Stroh Brewery Co., 750 F.2d 631, 638 (8th Cir.1984) ("What do the buyers understand by the word for whose use the parties are contending."). However, the factual record does not support SRF's argument. First, most of the declarations in support of CSR's motion for partial summary adjudication were made by members of the America Yoga community--members of the group of "buyers" relevant to the genericness analysis. Second, even if this declarant testimony did not exist, the record also shows "Self-realization" has the same meaning among American Yoga followers and the general American public. CSR introduced evidence that the term "Self-realization" was not used in the United States until Hindu-Yoga teachers introduced it as a translation of a Hindu term.
 
 
 41
 Having concluded that CSR met its burden as the proponent of summary judgment, we now consider whether SRF's evidence in opposition to summary adjudication raised a genuine issue of material fact about genericness. The only evidence SRF offers are declarations by its employees and wholesalers that they think of SRF when they hear the term "Self-realization." However, we agree with the district court that these declarations had "little probative value regarding the assessment of consumer perception" because they were from SRF's employees and wholesalers. Trademark law is skeptical of the ability of an associate of a trademark holder to transcend personal biases to give an impartial account of the value of the holder's mark. " 'Attestations from person in close association and intimate contact with (the trademark claimant's) business do not reflect the views of the purchasing public.' " Norm Thompson Outfitters, Inc. v. General Motors Corp., 448 F.2d 1293, 1297 (9th Cir.1971) (quoting 88cents Stores,Inc. v. Martinez, 227 Or. 147, 361 P.2d 809, 814 (1961)). As we discuss in the next section, the district court ruled that these declarations had little probative value to prove that "Self-realization" had secondary meaning when SRF used it in its registered marks, not to prove that the term was not generic as a part of SRF's trade names. Nevertheless, the declarations also have little value to prove that "Self-realization" is generic for the same reason that they cannot establish secondary meaning: SRF's declarants have too close an affiliation with SRF for their account of the association between "Self-realization" and SRF to reliably describe the perceptions of consumers in general.
 
 
 42
 We conclude that SRF failed to raise a genuine issue of material fact suggesting that "Self-realization" might not be generic as part of the name of a Hindu-Yoga spiritual organization. We affirm the district court's ruling that "Self-realization" was an invalid trade name as a matter of law.
 
 
 43
 C. The Descriptiveness of "Self-realization" As a Trademark
 
 
 44
 While SRF did not register the term "Self-realization" as a trademark with California or the U.S. Patent and Trademark Office, it did assert in its suit that it had trademark rights to the term. The district court originally ruled on summary judgment for CSR that "Self-realization" was invalid as a trademark because it was generic. After SRF moved for reconsideration, the district court reconsidered its ruling as it applied to "Self-realization" when the term was used in the context of SRF's products and services. However, the court granted summary judgment for CSR on other grounds, because "Self-realization" was descriptive of SRF's products and services, and it lacked secondary meaning. A trademark that is descriptive and lacks secondary meaning is invalid. Bada Co. v. Montgomery Ward & Co., 426 F.2d 8, 11 (9th Cir.1970). SRF argues the district court erred. We affirm.
 
 
 45
 1. "Self-realization" Is Descriptive As to SRF's Products
 
 
 46
 A trademark is descriptive if it describes the product to which it refers or its purpose. Bristol-Myers Squibb Co. v. McNeil-P.P.C. Inc., 973 F.2d 1033, 1040 (2d Cir.1992). The products in question are books, magazines, audio and video recordings, and spiritual and Yoga services. The issue is whether "Self-realization" is descriptive with respect to those products and services.
 
 
 47
 CSR introduced evidence in support of summary judgment showing that "Self-realization" described a generic state of spiritual attainment, and that attaining this state is the purpose of Yoga. It follows that products like "Self-realization books" and services like "Self-realization Yoga classes" are products and services with the purpose of helping the purchaser achieve the state of Self-realization. "Self-realization" is thus descriptive as it applies to SRF's products and services.
 
 
 48
 2. "Self-realization" Is Not Suggestive As to SRF's Products
 
 
 49
 SRF argues that the evidence showed that "Self-realization" is suggestive, not descriptive. If SRF is correct, it would not have to prove that "Self-realization" has acquired secondary meaning with respect to SRF's products and services to establish that the term is a valid mark. See id.; AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 349 (9th Cir.1979). We reject the claim that "Self-realization" is suggestive as to SRF's products and services.
 
 
 50
 "Although the distinction between descriptive and suggestive marks may be inarticulable, several criteria offer guidance. The primary criterion is the imaginativeness involved in the suggestion, that is, how immediate and direct is the thought process from the mark to the particular product." AMF Inc., 599 F.2d at 349 (citations and quotations omitted). "If the mental leap between the word and the product's attribute is not almost instantaneous, this strongly indicates suggestiveness, not direct descriptiveness." 1 McCarthy Sec. 11.21, at 11-108 to -109 (citing Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519 (11th Cir.1991)).
 
 
 51
 Elizabeth Taylor Cosmetics Co. v. Annick Goutal, 673 F.Supp. 1238 (S.D.N.Y.1987), cited by SRF, illustrates the difference between suggestiveness and descriptiveness. Both parties manufactured perfumes called "Passion." The court ruled that the term was suggestive, not descriptive. Id. at 1243-44. The most obvious way to describe a perfume is by its scent: "Musky," for instance. It takes a mental leap to imagine that the scent evokes a particular emotion, like "Passion."
 
 
 52
 SRF's marks are not suggestive. No mental leap is required to conclude that a "Self-realization book" is a book designed to help readers achieve higher consciousness.
 
 
 53
 SRF cites In re Recovery, Inc., 196 U.S.P.Q. 830 (T.T.A.B.1977), in support of its argument. Recovery, Inc. had applied to register the term "Recovery" as a service mark for its training, conferences, and publications. The company's products and services were all designed to teach lay leaders to provide aftercare self-help to people who had completed psychiatric counseling. Id. at 831. The Trademark Trial and Appeal Board, finding that "Recovery" was suggestive in context, reversed a finding that the term was descriptive and a registration denial. Id. at 832.
 
 
 54
 The Trademark Trial and Appeal Board admitted that this case illustrated how difficult it can be to distinguish between descriptiveness and suggestiveness. Id. Even so, we do not think the case supports SRF's argument. "Recovery" was most likely to be descriptive in the context of self-help services and products, which could be used directly by people who had completed psychiatric counseling or had not participated in such counseling at all. However, Recovery, Inc.'s use of the term was one step removed--"Recovery" products and services were services to teach informal counselors to teach ex-patients to help themselves.
 
 
 55
 We think this extra step constitutes the difference between descriptiveness and suggestiveness, and SRF's use of "Self-realization" lacks the extra step. A "Self-realization book," tape, or class is designed to help the user attain spiritual attainment. It resembles a "Recovery" book designed to help the reader recover from emotional trauma more than it resembles a "Recovery" book designed to help the reader counsel another person to recover from such a condition. Thus, "Self-realization" is descriptive in the context of the books, tapes, and other products and services sold by SRF.
 
 
 56
 3. "Self-realization" Has No Secondary Meaning As to SRF's
 
 Products
 
 57
 Since SRF's marks were descriptive, they had to have secondary meaning to be valid. "The basic element of secondary meaning is a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." Levi Strauss & Co. v. Blue Bell, Inc., 632 F.2d 817, 820 (9th Cir.1980). "Self-realization" has secondary meaning if buyers and potential buyers automatically associate "Self-realization" literature, tapes, and services with SRF.
 
 
 58
 CSR introduced evidence from members of the American Hindu-Yoga community that "Self-realization" to them meant a spiritual state sought by all Yoga followers. This evidence established lack of secondary meaning by showing that a Hindu-Yoga adherent would not automatically associate a "Self-realization" product with SRF. There was no evidence in the record to the contrary, other than declarations, filed by SRF, of its own members and associates. As we concluded in the previous section, these declarations had little probative value. See Norm Thompson Outfitters, 448 F.2d at 1297. We affirm the district court's post-reconsideration grant of summary judgment to CSR on "Self-realization" as a trademark because the term is descriptive and lacks secondary meaning.
 
 VI. THE POSSIBLE VALIDITY OF THE COMPOSITE
 
 59
 "SELF-REALIZATION" NAMES AND MARKS
 
 
 60
 The last set of trade names and marks for us to consider are SRF's trade names and marks for the terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church" (the composite terms). SRF argues that the district court erroneously "dissected" the marks--that the district court should not have used evidence that "Self-realization" was invalid to prove that the composite terms were invalid.
 
 
 61
 Before we reach the merits of SRF's argument, we must address an appealability issue. SRF first raised its dissection argument in its motion for reconsideration of the district court's grant of summary judgment. A party does not properly preserve an issue for appeal by raising it for the first time in a motion for reconsideration. Intercontinental Travel Marketing, Inc. v. FDIC, 45 F.3d 1278, 1286 (9th Cir.1995). However, we may exercise discretion to consider a waived issue in certain cases, one such case being when the issue presented is a pure question of law. Telco Leasing, Inc. v. Transwestern Title Co., 630 F.2d 691, 693 (9th Cir.1980). SRF's argument presents a legal question, and we exercise our discretion to consider it.
 
 
 62
 We begin by observing that the district court did decide the composite terms were invalid because "Self-realization" was invalid. In its April 24, 1992, bench ruling, the district court determined that "Self-realization" was generic. It also found that "Church" and "Fellowship" were generic in connection with a spiritual organization's name. The court, having concluded "Self-realization" was generic, acknowledged that "words that cannot be registered individually, may sometimes become a trademark when taken together.... But such is clearly not the case here." The court's later reconsideration of the terms' invalidity as service marks did not affect this conclusion about the terms' validity as trade names.
 
 
 63
 While the district court did reconsider its grant of summary judgment on the service marks "Self-Realization Fellowship" and "Self-Realization Fellowship Church," it granted summary judgment for CSR on the marks on other grounds. The district court concluded after reconsideration that "Self-realization" is descriptive and lacks secondary meaning. The court then ruled that "Self-Realization Fellowship" and "Self-Realization Fellowship Church" were invalid as service marks because SRF had not shown these terms had secondary meaning, either.
 
 
 64
 In both rulings, the district court determined that the composite terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church" were invalid because "Self-realization" was invalid, and because adding "Fellowship" or "Fellowship Church" could not make the composite terms valid. SRF argues that it was improper for the court to rule on the validity of the composite terms by ruling on the validity of their component parts. We agree. The district court erred by using the invalidity of "Self-Realization" as a trade name and trademark to determine the validity of "Self-Realization Fellowship" and "Self-Realization Fellowship Church." "[T]he validity and distinctiveness of a composite trademark is determined by viewing the trademark as a whole, as it appears in the marketplace." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir.1993). A court may not review the validity of a composite-term trademark by "dissecting" the term and reviewing the validity of its component parts individually. See id.
 
 
 65
 CSR introduced no evidence in support of its motion for summary adjudication showing that "Self-Realization Fellowship" or "Self-Realization Fellowship Church" were invalid as complete terms. Instead, CSR argued that "Self-realization" was invalid, and words like "Fellowship" and "Church" could not make the term valid. Our case law precludes such proof--the composite marks' "validity [are] not judged by an examination of [their] parts." California Cooler, Inc. v. Loretto Winery, Ltd., 774 F.2d 1451, 1455 (9th Cir.1985). The authority on which the district court relied to justify its conclusion, CES Publishing Corp. v. St. Regis Publications, Inc., 531 F.2d 11, 13-15 (2d Cir.1975), is not the law of this circuit on this issue.
 
 
 66
 Because CSR's proof for the composite names and marks could not establish the terms' invalidity, the district court erred by granting summary judgment for CSR on SRF's trade names and marks for the terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church." We reverse the grants of summary judgment for CSR and remand the infringement claims on the composite marks for further consideration. We do not reach SRF's other appeals from the district court's rulings on the composite names and marks.
 
 VII. THE DISSOLUTION AND CANCELLATION ORDERS
 
 67
 In summary, we have ruled on the district court's grants of summary judgment as follows. We have affirmed the district court's grants of summary judgment for CSR on SRF's federally-registered service mark "Paramahansa Yogananda," SRF's trade name "Self-realization," and SRF's service mark "Self-realization." We have reversed the district court's grants of summary judgment for CSR on the trade names and marks for the terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church." We have not reviewed the court's grant of summary judgment for CSR on SRF's state-registered "Paramahansa Yogananda" service mark.
 
 
 68
 We now apply our conclusions about the district court's summary judgment rulings to review the court's orders dissolving the preliminary injunction against CSR and requiring the cancellation of SRF's registered marks. We first consider the order for the cancellation of SRF's registrations.
 
 
 69
 SRF had registered the terms "Paramahansa Yogananda," "Self-Realization Fellowship," and "Self-Realization Fellowship Church" with state and federal authorities. We have affirmed the district court's ruling that the term "Paramahansa Yogananda" was invalid as a matter of federal trademark law. We thus affirm the court's July 9 order to the extent that it orders the cancellation of SRF's federal registration of the term "Paramahansa Yogananda." Because we have not reviewed the district court's ruling that "Paramahansa Yogananda" was an invalid service mark as a matter of state law, we do not review the cancellation order to the extent that it orders the cancellation of SRF's state registration for the term. However, because we have reversed the district court's rulings that "Self-Realization Fellowship" and "Self-Realization Fellowship Church" are invalid trademarks, we vacate the portion of the July 9 order that directs the cancellation of SRF's registrations for the terms "Self-Realization Fellowship" and "Self-Realization Fellowship Church." On remand, the district court should direct the United States Patent and Trademark Office and the California Secretary of State to reinstate SRF's registrations for these terms.
 
 
 70
 We now turn to the dissolution of the preliminary injunction. A moving party is entitled to a preliminary injunction if it demonstrates that it is likely to succeed on the merits and may suffer irreparable injury, or that serious questions exist on the merits and the balance of hardships tips in its favor. National Wildlife Fed'n v. Burlington N. R.R., 23 F.3d 1508, 1510 (9th Cir.1994). The two tests are not separate but represent a sliding scale in which the required probability of success on the merits decreases as the degree of harm increases. See id.
 
 
 71
 When the district court ruled on summary judgment that each of the trade names and marks at issue was invalid as a matter of law, it followed that SRF was no longer entitled to a preliminary injunction, because it had no likelihood of success on the merits of the infringement claim for any name or mark. Because we have affirmed the district court's summary judgment rulings that "Self-realization" is invalid as a trade name and as a service mark and that "Paramahansa Yogananda" is invalid as a service mark, we affirm the district court's dissolution of the preliminary injunction to the extent that the injunction enjoins CSR from using the terms "Paramahansa Yogananda" and "Self-realization."
 
 
 72
 However, we reverse the dissolution of the preliminary injunction to the extent that the injunction enjoins CSR from using "Self-Realization Fellowship" and "Self-Realization Fellowship Church" as trade names and trademarks. Because we have concluded the district court erred in granting summary judgment to CSR on the validity of these trade names and marks and the summary judgment grants were the only basis for dissolving the preliminary injunction, our reversal of summary judgment requires reversal of the dissolution with respect to these marks as well.
 
 
 73
 AFFIRMED in part, REVERSED in part, VACATED in part, and REMANDED.